IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 07-169 |
| | : | |
| CHARLES DUKES | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.,**                                                                                               **June 30, 2008**

      Charles Dukes seeks to suppress drugs, drug paraphernalia, money, a gun, and his statements to police. Mr. Dukes argues his arrest and subsequent seizures violate the Fourth Amendment. He denies ever speaking to Officer Betts and asserts his statements were made without proper *Miranda* warnings or an effective waiver. Mr. Dukes also demands a *Franks*[1] hearing to show Officer Bonnett's statements ultimately supporting the search warrant were false and a complete fabrication.

      The Government contends Officer Bonnett had probable cause to arrest Mr. Dukes outside of his parents' garage for drug sales and search his person incident to arrest. The Government also asserts probable cause supported the search warrant, thus the resulting evidence should be admitted. The Government further argues Mr. Dukes received proper *Miranda* warnings and effectively waived his rights. The Government contends Mr. Dukes fails the *Franks* test because he cannot prove the challenged statements are false, nor that the alleged misstatements were intentional or reckless. Because I agree Officer Bonnett had probable cause to arrest Mr. Dukes for drug sales, probable cause supported the search warrant, and I do not find Mr. Dukes's testimony credible, the

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

suppression and *Franks* motions are all denied.

**FINDINGS OF FACT**

1. On August 16, 2006, around 10:20 p.m., Philadelphia Police Officers Frank Bonnett, Thomas Lacorte, and Fred Wiley set up surveillance in an alley three houses north of the rear garage at 7705 Temple Road. They were in full uniform in an unmarked car.

2. Officer Bonnett has worked for the Philadelphia Police Department for about 10 ½ years, all within in the Fourteenth District, the Mt. Airy section which includes the vicinity surrounding 7705 Temple Road. He has been with Philadelphia's Narcotic Enforcement Team (NETS) for the last seven-and-a-half years. Officer Bonnett has conducted around 500 surveillances during his career and has made more than 500 arrests, about four of these arrests in the area around 7705 Temple Road. He has received narcotics training on drug packaging and distribution. In his experience, the vicinity of 7705 Temple Road is an active drug and crime area.

3. Officer Bonnett set up surveillance there because a confidential source had informed him a father and son were selling drugs out of the 7705 Temple Road garage. This confidential source, an unpaid but concerned citizen, had provided Office Bonnett with reliable information on five prior occasions, all of which proved truthful.

4. On August 16, 2006, at approximately 10:30 p.m., Officer Bonnett saw a Black male, later identified as the defendant, Charles Dukes, walk through the alley and open the garage door of the residence at 7705 Temple Road.

5. Approximately five minutes after Mr. Dukes's arrival, Officer Bonnett saw a black Ford Taurus station wagon pull into the area in front of the garage.

6. Mr. Dukes approached the passenger side of the car and briefly talked with the driver. The driver gave Mr. Dukes some money. Mr. Dukes then re-entered the garage for about ten seconds and returned to the Ford Taurus station wagon carrying unidentified small objects.

7. Officer Bonnett then saw Mr.Dukes hand the small objects to the driver. After receiving the small objects, the driver left.

8. About ten minutes later, at 10:45 p.m., Officer Bonnett saw a white Honda Accord pull into the area in front of the garage at 7705 Temple Road. After Mr. Dukes briefly spoke with the driver through the Honda's passenger side, the driver gave Mr. Dukes money.

9. Mr. Dukes then re-entered the garage for approximately ten seconds and returned to the Honda Accord carrying unidentified small objects. Officer Bonnett saw Mr. Dukes hand the

unidentified small objects to the driver. After receiving the small objects, this other driver also left.

10. Officer Bonnett did not pursue either driver because there was not sufficient back-up that night. Had Officer Bonnett pursued either driver, he would have jeopardized his investigation of Mr. Dukes.

11. Based on Officer Bonnett's experience and training as a member of the Philadelphia Police Department, his 500 arrests, four which were in the vicinity of 7705 Temple Road, the two exchanges of money and small objects, and the brief conversations between Mr. Dukes and the two drivers, Officer Bonnett believed Mr. Dukes was distributing drugs, a felony.

12. Around 10:50 p.m., Officer Bonnett and the other officers left their unmarked car and approached Mr. Dukes, who was on the threshold of the 7705 Temple Road garage door and the street.

13. Upon approaching Mr. Dukes outside of the garage door, Mr. Dukes attempted to close the garage door. Officer Lacorte, who was also outside of the garage door, blocked Mr. Dukes's attempt to close the door.

14. While Officers Bonnett and Wiley stopped Mr. Dukes outside the garage, Officer Bonnett looked through the open garage door and saw in plain view a clear plastic baggie containing several green-tinted packets of the white chunky substance later identified as crack cocaine.

15. Officer Bonnett then placed Mr. Dukes under arrest. Incident to the arrest, Officer Bonnett searched Mr. Dukes and seized $ 479, a Nextel cell phone, and a man purse with a number of credit cards and a social security card.

16. Officer Bonnett reported his observations to Philadelphia Police Officer Charles Kapusniak to obtain a search warrant for 7705 Temple Road.

17. In executing the search warrant, Officer Kapusniak recovered the following: six clear bags containing chunks of white substance; 100 zip lock packets containing chunky white substances; a black grinder; a glass plate with white residue; 2 bottles of inositol; $2670 in cash; a silver gun box containing a loaded Smith & Wesson handgun; and a bill and Pennsylvania licence in the name of Charles Dukes. Officer Kapusniak later conducted a field test of the chunky white substance, confirming it to be cocaine.

18. Officer Kapusniak informed Officer Michael Spicer and Officer Perry Betts of the large quantity of drugs and asked if they would be interested in speaking with Mr. Dukes.

19. The next day, August 17, 2006, Officers Spicer and Betts met Mr. Dukes in a holding cell to see if Mr. Dukes would cooperate regarding local drug activity. They gave him his

*Miranda* rights prior to any discussion.  They did not ask him about his pending charges.

20. Mr. Dukes waived his *Miranda* rights and provided the officers with information regarding local criminal activity and information.  Mr. Dukes told the officer about a shotgun underneath a dresser and cabinets at 7740 Temple Road.  That same day police executed a warrant for that address and recovered the shotgun in the exact location Mr. Dukes had described.

21. Mr. Dukes also told Officer Betts and Spicer about a man named Steve, who was wanted in Kansas for nine kilograms of cocaine.  He gave police Steve's description and named a few of Steve's associates.  Mr. Dukes also informed the officer about a local Korean store and a pizza shop that were used for drug activity.  Mr. Dukes also told the officer he wanted to get his wallet back because he wanted his credit cards and business contacts back.

22. At the suppression hearing, Mr. Dukes testified to a different sequence of events leading to his arrest:

   On August 16, 2006 at 10:19 p.m., Mr. Dukes returned from the local Shop Rite, which he left at 10:06 p.m.  He packed up his purchases, including the two cartons of detergent soap for his mother, and walked approximately 45-50 feet to the garage door outside his parents' home on 7705 Temple Road.  Mr. Dukes claims he was placing the two cartons of detergent soap inside the garage when Officer Bonnett, in plain clothes, approached him and hit him.  After Officer Bonnett hit him, Mr. Dukes's cell phone fell out.  He testified he attempted to record the encounter on his cell phone, but he could only see the time: 10:21 p.m.  Mr. Dukes claims Officer Bonnett yelled at him for being in his driveway and hit him again.  At this time, Mr. Dukes claims Officer Bonnett handcuffed him while the other officers ran in and out of the garage, rummaging through the garage's contents.  Mr. Dukes denies the alleged drug transactions ever occurred because he was already arrested at 10:21 p.m.

   Mr. Dukes produced a cell phone video recording a concerned neighbor had taken of the August 16, 2006 encounter with police.  The video, however, does not indicate either the date, or time.  The video demonstrated gray and random flashes of light, which allegedly represented the officers scurrying back and forth from the garage.  No witness, aside from Mr. Dukes, could authenticate the video's contents.  Mr. Dukes claims he was taken down to the station around 10:50 p.m.  He denies ever seeing Officer Betts or Spicer, or speaking with them.  He claims the entire affidavit of probable cause used to secure the warrant was based on Officer Bonnett's fabrications and lies.

   Mr. Dukes admitted on cross-examination he was previously convicted of bank and wire fraud.  Mr. Dukes also admitted his birthday was the same birthday scribbled on Officer Betts's interview notes and that his nickname was "Dog" which was also scribbled on Officer Bets's interview notes.

23.      After hearing all the testimony, evaluating the witnesses, their demeanor, and considering Mr. Dukes's interests in the outcome of this case, I do not find Mr. Dukes's version of events credible. Mr. Dukes's testimony contradicted the record. Mr. Dukes states he never saw nor spoke to Officer Betts. Officer Betts, however, recovered a shotgun underneath a dresser and cabinets in 7740 Temple Road because Mr. Dukes provided that specific location. Officer Betts had also noted Mr. Dukes's birthday and nickname on his notes from his interview with Mr. Dukes. In addition to these contradictions, Mr. Dukes's previous *crimen falsi* of wire and bank fraud cause me to further question the veracity of his statements.

24.      I find the testimonies of Officers Bonnett, Kapusniak, and Betts credible. They do not have any interest in this case, nor have I been presented with any reason to question the veracity of their statements.

**DISCUSSION**

Mr. Dukes suppression motions present me with numerous constitutional challenges to the police officers' action. I will first evaluate his public warrantless arrest, then the search incident to his arrest, the search warrant based on Officer Bonnett's plan view observations of the garage, Mr. Dukes's statements to police, and Mr. Dukes's request for a *Franks* hearing. Because all the police's actions were constitutional, all the evidence will be admitted. I will deny Mr. Dukes's request for a *Franks* hearing because I do not find his version of the events credible.

Probable cause is required to make a warrantless arrest in public. Probable cause to arrest exists if the totality of circumstances cause a "prudent person to believe that a crime has been committed and the person to be arrested committed it." *United States v. Stubbs,* 281 F.3d 109, 122 (3d Cir. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000)). In evaluating probable cause, courts must consider the "totality of the circumstances" including the "knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." *Id.* (citing *United States v. Harris*, 482 F.2d 1115, 1117 (3d Cir. 1973)). Probable cause is a "fluid

concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Burton,* 288 F.3d 91, 98 (3d Cir. 2002) (citing *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).  Probable cause "requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Id.* (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482-83 (3d Cir.1995)).  The facts and observations must be analyzed "through the lens of the Task Force's significant experience with similar transactions." *Id.* at 99 (citing *Ornelas*, 517 U.S. at 696; *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

Here, Officer Bonnett approached Mr. Dukes in a public place to arrest him because he had probable cause Mr. Dukes was distributing drugs.  Officer Bonnett's observations combined with his training and experienced provided him with probable cause to approach Mr. Dukes.  During his surveillance of 7705 Temple Road, Officer Bonnett saw Mr. Dukes exit the garage, speak with the driver, re-enter the residence, and re-emerge with small objects.  Mr. Dukes then gave the small objects to the driver and received money from the driver.  The driver left, and within minutes, the Officer Bonnett observed Mr. Dukes go through the same sequence with another unidentified driver.  Officer Bonnett had narcotics training, including exposure to drugs packaging and distribution, and in his 10 ½ year career, he had made more than 500 arrests.  Because of his training and 500 arrests, he was able to identify actions and factors, which resulted in criminal activity. *See id.*  Based on all these facts, it would be reasonable for a trained narcotics police officer to believe drug transactions had occurred. *See United States v. Smith*, Crim No. 04-11, 2006 WL 197453, *1-2 (D. Del. Jan 26,

2006) (finding probable cause existed when trained officers observed hand-to-hand transaction).[2]

Mr. Dukes argues police needed probable cause and exigent circumstances because he was prevented from entering the garage, a private place. Individuals, however, cannot have a reasonable expectation of privacy when their actions are plainly visible, nor can they evade an arrest in a public place by escaping into a private place. *United States v. Santana*, 427 U.S. 38, 43 (1976).

In *Santana*, Philadelphia Narcotic Police Officers approached "Mom" Santana's house because she had been identified as a drug supplier. *Id.* at 39. "Mom" Santana stood at the threshold of her doorway when the officers approached her. *Id.* Upon seeing them, she immediately ran inside and the officers chased her through the residence. *Id.* The officers eventually apprehended her and seized the drug packets that had flown from her purse during the chase. *Id.* at 40. The Supreme Court admitted the drugs because "Mom" Santana was originally in a public place and could not evade a public arrest by fleeing into a private place. *Id.* at 43 (reversing Third Circuit's affirmation of the initial suppression).

Like "Mom" Santana, Mr. Dukes was first seen in public, not in a private residence. He could not have a reasonable expectation of privacy while standing at the threshold of the open garage and the street. *Id.* Mr. Dukes, like "Mom" Santana, also cannot evade a lawful warrantless arrest

---

[2] Mr. Dukes challenges the reliability of Officer Bonnett's confidential source. I find this argument unpersuasive because Officer Bonnett credibly testified this confidential source has provided him with reliable information on five previous occasions, which were all truthful. Officer Bonnett's observations of Mr. Dukes confirmed the drug activity the confidential source had reported, and Officer Bonnett did not approach Mr. Dukes until after he observed the Mr. Dukes engage in the suspected drug activity. This is not a case where the police approached and arrested an individual solely relying on a confidential informant's information. *United States v. Goodrich*, 450 F.3d 552, 561 (3d Cir. 2006) (discussing what factors court should review in confidential informant cases). As the record provides, Officer Bonnett's independent observations supported his initial approach of Mr. Dukes.

by escaping into a private residence.

Alternatively, Officer Bonnett at a minimum had reasonable suspicion to approach Mr. Dukes. Officers may stop individuals upon articulable facts of reasonable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). With reasonable suspicion, officers may "detain that person briefly in order to 'investigate the circumstances that provoke suspicion.' " *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975)); *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 354 (E.D. Pa. 2006). Mr. Dukes's conduct of providing two drivers small unidentified objects in exchange for money in a high crime area suffices as articulable facts Mr. Dukes was engaged in criminal activity. Officer Bonnett, thus, had a right to approach Mr. Dukes to investigate further.

As Officer Bonnett approached Mr. Dukes, exigent circumstances also arose. Upon the approach of the police, Mr. Dukes attempted to evade police by running into the garage, thus initiating the exigent circumstance of hot pursuit. *Santana*, 427 U.S. at 43. There was also the need to preserve evidence because Mr. Dukes was returning to the garage during the suspected drug transactions. *Michigan v. Tyler*, 436 U.S. 499, 509 (1978) (citing *Ker v. California*, 374 U.S. 23 (1963)). Additionally, while detaining Mr. Dukes, Officer Bonnett saw the green baggies and other drug paraphernalia in plain view. All these factors combined gave Officer Bonnett probable cause and the right to lawfully arrest Mr. Dukes outside the garage.

Because probable cause supported both the search incident to Mr. Dukes's arrest and the search warrant, the seized evidence will be admitted. As previously discussed, the totality of the circumstances gave Officer Bonnett probable cause to arrest Mr. Dukes outside of the 7705 Temple Road garage. The Nextel cell phone, money, man purse, and social security card seized incident to

8

this arrest are admitted. *See Knowles v. Iowa*, 525 U.S. 113, 116 (1998) (holding searches incident to arrest are permitted because of "the need to disarm the suspect in order to take him into custody, and the need to preserve evidence for later use at trial"). Regarding the warrant, Officer Bonnet's earlier observations provided him probable cause to approach and seek a search warrant for the garage. The drugs, drug paraphernalia, money, and firearm seized from warrant are not fruits of the poisonous tree, thus admissible. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963) (discussing fruits of the poisonous tree doctrine).

Mr. Dukes's statements are admissible.[3] *Miranda* warnings must be given to all individuals subject to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 438 (1966). Individuals can forgo these warnings with a knowing, intelligent, and voluntary waiver. *Id.* In evaluating a *Miranda* waiver, courts examine the totality of the circumstances such as the facts and circumstances surrounding the case, and the defendant's background, experience, and conduct. *United States v. Velasquez*, 885 F.2d 1076, 1086-88 (3d Cir. 1989). Voluntary must be a "product of a free and deliberate choice rather than intimidation, coercion or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). In evaluating whether coercion existed, courts consider length and location of the interrogation, its continuity, the defendant's maturity, level of education, physical condition, and his mental health. *United States v. Swint*, 15 F.3d 286, 288-89 (3d Cir.1994); *United States ex rel. Hayward v. Johnson*, 508 F.2d 322, 326 (3d Cir. 1975). *Miranda* does not require written waivers of these rights. *United States v. Stuckey*, 441 F.2d 1104, 1105 (3d Cir. 1971) (citing *Miranda*, 384

---

[3] Since the indictment and through his more than thirty pro se filings, Mr. Dukes has insisted Officer Bonnett lied about the entire sequence of events. He has also insisted he never gave any statements to police. I address the alleged *Miranda* violation because Mr. Dukes's motion to suppress discusses it.

U.S. at 436). The Government must show by a preponderance of the evidence statements complied with *Miranda*. *Oregon v. Bradshaw*, 462 U.S. 1039, 1044-46 (1983).

In this case, Officers Spicer and Betts gave Mr. Dukes his *Miranda* warnings prior to questioning him. Mr. Dukes stated he understood and waived these rights. Mr. Dukes did not present any evidence his statements were coerced.[4] No evidence has been presented questioning Mr. Dukes's maturity, education, or mental health. Mr. Dukes is a 43-year-old man who has been arrested at least twice in his adult life. *Miranda* does not require written waiver, so the fact the officers did not provide a written waiver is not dispositive.

Mr. Dukes seeks to suppress physical evidence and incriminating statements through a motion for a *Franks* hearing and motion to suppress. Because I do not find Mr. Dukes's testimony credible, I will deny his request for a *Franks* hearing. Mr. Dukes is entitled to a hearing challenging the veracity of a statement in the warrant affidavit only if he can make a "substantial preliminary showing" (1) an affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit; and (2) the allegedly false statement was necessary to the finding of probable cause. *Franks*, 438 U.S. at 155-56. To prove an affiant made the false statement knowingly and intentionally or with reckless disregard of the truth, Mr. Dukes must identify which portions of the affidavit he claims are false, provide supporting reasons, and include evidence of falsity. *Id.* at 171 (holding granting of evidentiary hearing requires more than a conclusory attack and "must be supported by more than a mere desire to cross-examine").

Mr. Dukes can only meet the first prong of *Franks* if I reject the testimonies of Officers

---

[4] Mr. Dukes's only evidence is his testimony of never seeing Officer Betts nor Officer Spicer, let alone providing them with any statements. Mr. Dukes's information, however, led police to the seizure of firearms and drugs in other criminal cases.

Bonnett and Betts and find him credible. As I previously discussed, I do not find Mr. Dukes's testimony credible. Therefore, his request for a *Franks* hearing is denied.

**CONCLUSIONS OF LAW**

1.  Officer Bonnett had probable cause to arrest Mr. Dukes outside the garage because he had observed him selling drugs to two buyers.

2.  Officer Bonnett, at a minimum, had reasonable suspicion to detain and investigate Mr. Dukes outside the garage because criminal activity was afoot when observing Mr. Dukes exchange packets of drugs for money in a high crime area. Officer Bonnett's reasonable suspicion ripened into probable cause because as he detained Mr. Dukes outside the garage, he observed in plain view drugs and drug paraphernalia inside the garage.

3.  Upon approaching Mr. Dukes, Mr. Dukes attempted to evade police initiating the exigent circumstance of hot pursuit. There was also an urgency to preserve the evidence inside the garage.

4.  Officers Spicer and Betts informed Mr. Dukes of his *Miranda* warnings and Mr. Dukes knowingly, intelligently, and voluntarily waived them. Mr. Dukes voluntarily provided Officers Spicer and Betts with information leading to a seizure of a firearm in another unrelated pending case.

5.  Mr. Dukes is not entitled to a *Franks* hearing because I do not find his testimony regarding August 16-17, 2003 credible.

An appropriate order follows: